Marshall A. Camp, State Bar No. 231389
mcamp@hueston.com
Padraic W. Foran, State Bar No. 268278
pforan@hueston.com
Martin E. Brenner, State Bar No. 333540
mbrenner@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:    (888) 775-0898

Counsel for Non-Party
Qualcomm Technologies, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-CR-01152-BAS |
| Plaintiff, | **NON-PARTY QUALCOMM TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO QUASH RULE 17(c) SUBPOENA DUCES TECUM; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| KARIM ARABI, SHEIDA ALAN, SANJIV TANEJA, and ALI AKBAR SHOKOUHI, | |
| Defendants. | *[Filed concurrently herewith: Declaration of Padraic W. Foran]* |
| | Date:        TBD |
| | Time:        TBD |
| | Courtroom: 12B |
| | Judge:      Hon. Cynthia Bashant |

# TABLE OF CONTENTS

Page

I    INTRODUCTION ........................................................................................ 1

II   FACTUAL BACKGROUND ..................................................................... 4

     A.   Qualcomm Is Defrauded Into Purchasing Abreezio ............................ 4

     B.   In Civil Litigation Against Arabi, Qualcomm Produced
          Nearly 100,000 Documents .................................................................... 5

     C.   Qualcomm Provided All of the Civil Discovery to the
          Government ............................................................................................. 6

     D.   The August 7 Subpoena ......................................................................... 6

III  LEGAL STANDARD ................................................................................. 7

IV   ARGUMENT .............................................................................................. 8

     A.   The Subpoena Seeks Information that Is Irrelevant and
          Inadmissible ........................................................................................... 9

     B.   The Subpoena Seeks Materials Procurable From Other
          Sources ................................................................................................. 12

     C.   The Subpoena Lacks Specificity and Represents a "General
          Fishing Expedition." ........................................................................... 13

     D.   Compliance With the Subpoena Would Be Unreasonable
          and Oppressive .................................................................................... 16

V    CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bowman Dairy Co. v. United States*,
    341 U.S. 214 (1951) ...................................................................................... 3, 7

*Chevron Corp. v. Snaider*,
    78 F. Supp. 3d 1327 (D. Colo. 2015) ............................................................ 15

*United States v. Ellis*,
    2017 WL 1164172 (N.D. Cal. Mar. 29, 2017) .............................................. 16

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ...................................................................................... 16

*United States v. Akhavan*,
    505 F. Supp. 3d 289 (S.D.N.Y. 2020) ............................................................. 9

*United States v. Ali*,
    2007 WL 1229415 (D. Or. Apr. 24, 2007) .................................................... 18

*United States v. Burley*,
    2023 WL 3792641 (N.D. Cal. June 2, 2023) .................................................. 3

*United States v. Chan*,
    2020 WL 2425798 (N.D. Cal. May 12, 2020) .............................................. 12

*United States v. Collins*,
    2013 WL 1089908 (N.D. Cal. Mar. 15, 2013) ........................................ 11, 15

*United States v. Eden*,
    659 F.2d 1376 (9th Cir. 1981) ......................................................................... 8

*United States v. Fields*,
    663 F.2d 880 (9th Cir. 1981) .......................................................... 2, 7, 11, 16

*United States v. George*,
    883 F.2d 1407 (9th Cir. 1989) ....................................................................... 10

*United States v. Jungen*,
    2014 WL 4924654 (E.D. Wis. Sept. 30, 2014) ......................................... 4, 17

6475274

1

<u>TABLE OF AUTHORITIES</u> (cont.)

2

Page(s)

3

*United States v. Krane*,
    625 F.3d 568 (9th Cir. 2010) ............................................................................ 1

4

5

*United States v. Lee*,
    2009 WL 724042 (N.D. Cal. Mar. 18, 2009) .......................................... 14, 16

6

7

*United States v. Nix*,
    251 F. Supp. 3d 555 (W.D.N.Y. 2017) ........................................................... 18

8

9

*United States v. Nixon*,
    418 U.S. 683 (1974) ................................................................................. passim

10

*United States v. Noriega*,
    764 F. Supp. 1480 (S.D. Fla. 1991) ................................................................ 14

11

12

*United States v. Pac. Gas & Elec. Co.*,
    2016 WL 3350326 (N.D. Cal. June 16, 2016) .................................... 4, 12, 18

13

14

*United States v. Patterson*,
    2020 WL 2217262 (D. Md. May 7, 2020) ................................................. 4, 18

15

16

*United States v. Reyes*,
    239 F.R.D. 591 (N.D. Cal. 2006) ............................................................ passim

17

18

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ........................................................................ 16

19

20

*United States v. Sellers*,
    275 F.R.D. 620 (D. Nev. 2011) ......................................................... 3, 9, 14, 15

21

22

*United States v. Western Titanium, Inc.*,
    2010 WL 11628781 (S.D. Cal. Nov. 22, 2010) .............................................. 15

23

24

*United States v. Zavada-Tapia*,
    2010 WL 5330506 (E.D. Cal. Dec. 20, 2021) ................................................ 12

25

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ........................................................................................ 16

26

27

**<u>Rules</u>**

28

Fed. R. Crim. Proc. 16 ...................................................................................... 7

1

TABLE OF AUTHORITIES (cont.)

2

Page(s)

3    Fed. R. Crim. Proc. 17 ........................................................................................... passim

4    Fed. R. Crim. Proc. 26.2 ................................................................................................ 12

5    Fed. R. Evid. 402 ........................................................................................................... 10

6    Fed. R. Evid. 803 ........................................................................................................... 11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that, on a date and time to be determined by the

3  Court, in the James M. Carter and Judith M. Keep United States Courthouse of the

4  United States District Court for the Southern District of California, located at 333 West

5  Broadway, San Diego, CA 92101, Non-Party Qualcomm Technologies, Inc.

6  ("Qualcomm"), by and through its undersigned counsel, will and hereby does move

7  under Federal Rule of Criminal Procedure Rule 17(c) and Criminal Local Rule 17.1

8  for an order quashing a Rule 17(c) subpoena served by Defendant Karim Arabi

9  ("Arabi") on Qualcomm on or around August 7, 2023 (the "Subpoena").

10      This Motion is based on this Notice of Motion and Motion, the following

11  Memorandum of Points and Authorities in support thereof, the concurrently filed

12  Declaration of Padraic W. Foran and Exhibits thereto, and any other materials or facts

13  on which the Court may rely.

14      As set forth in more detail in Qualcomm's Memorandum of Points and

15  Authorities, this Motion is brought on the following grounds:

16      1.  The Subpoena seeks irrelevant and inadmissible materials prohibited by Rule

17          17 of the Federal Rules of Criminal Procedure, Rule 17.1 of this District's

18          Local Criminal Rules, and *United States v. Nixon*, 418 U.S. 683 (1974).

19      2.  The Subpoena seeks materials that are otherwise reasonably procurable—

20          and, in fact, have been procured, given that Qualcomm already produced

21          them to the Government—in violation of Rule 17, Local Criminal Rule 17.1,

22          and *Nixon*.

23      3.  The Subpoena seeks materials that lack specificity and thus represents a

24          "general fishing expedition" prohibited by Rule 17, Local Criminal Rule

25          17.1, and *Nixon*.

26      4.  The Subpoena is unduly burdensome and oppressive on non-party

27          Qualcomm and should be quashed because it seeks improper information,

28

- 1 -

1        including materials protected by the attorney-client and work-product
2        privileges.
3        Accordingly, Qualcomm respectfully requests the Court grant its Motion and
4   quash the subpoena.

5

6   Dated: August 22, 2023                    Respectfully submitted,

7                                             HUESTON HENNIGAN LLP

8

9                                             By: _____
10                                            Marshall A. Camp
                                              Counsel for Non-Party
11                                            Qualcomm Technologies, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

6475274

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I      INTRODUCTION**

3    Non-party-victim Qualcomm Technologies, Inc. ("Qualcomm") brings this

4    motion to quash a pretrial Rule 17(c) subpoena served on Qualcomm by Defendant

5    Karim Arabi. Pretrial document subpoenas cannot be used in criminal cases "to

6    provide a means of discovery" but only "to expedite the trial by providing a time and

7    place before trial for the inspection of subpoenaed materials." *United States v. Nixon*,

8    418 U.S. 683, 698–99 (1974). Thus, pretrial subpoenas are authorized only where the

9    moving party can demonstrate: "'(1) that the documents are evidentiary and relevant;

10   (2) that they are not otherwise procurable reasonably in advance of trial by exercise of

11   due diligence; (3) that the party cannot properly prepare for trial without such

12   production and inspection in advance of trial and that the failure to obtain such

13   inspection may tend unreasonably to delay the trial; and (4) that the application is made

14   in good faith and is not intended as a general 'fishing expedition.'" *United States v.*

15   *Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (quoting *Nixon*, 418 U.S. at 699–700).

16   Arabi's subpoena fails to meet any of these elements and should be quashed.

17   *First*, the Subpoena seeks irrelevant and inadmissible information. It contains

18   sweeping requests for information unrelated to this case, for example "[a]ll Qualcomm

19   personnel files for all individuals" who so much as "*had a relationship* with Dr. Arabi

20   while he worked at Qualcomm," and "[a]ll materials or information related to any

21   internal incentive program that Qualcomm has to reward internal whistleblowers"—

22   with neither request cabined by any date or subject matter limitation. Foran Decl.

23   Ex. A at 8 (Requests 2A.8. and 3A) (emphasis added).[1]  And nearly all the requests are

24   directed to *inadmissible* information including, for example, numerous demands for

25

26   _____

27   [1] The Subpoena's documents requests, which are contained in "Attachment A" to the
     Subpoena, bear erroneous headers, with the requests grouped into three sections each
     bearing the label "A." *See* Foran Decl. Ex. A at 6–9. Thus, for clarity, this motion uses

28   the term "1A" to refer to the first section (*id.* at 6–7), "2A" to refer to the second (*id.*
     at 7–8), and "3A" to refer to the third (*id.* at 8–9).

materials, notes and "other documentation" related to interviews that Qualcomm or its counsel conducted as part of its internal investigation into Defendants' fraud, or that relate to meetings or communications between Qualcomm's counsel and the Government. *See id*. Ex. A at 6–7 (*e.g.*, Requests 1A.3, 2A.1). Such hearsay materials are not evidentiary and not a proper subject of a pretrial Rule 17 subpoena. *See, e.g.*, *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (quashing subpoena requesting "summaries, notes and memoranda related to the interviews" by defendant's former employer because requests called for inadmissible hearsay). Furthermore, a desire to obtain "impeachment material" is not a proper basis for a pretrial subpoena. *Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *accord United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981); *see also* Fed. R. Crim. Proc. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule."). Moreover, the requests for notes and documentation related to interviews and meetings involving Qualcomm counsel are plainly directed to materials covered by the attorney-client privilege or attorney work-product doctrine, which principle alone is a basis for quashing the subpoena. *Reyes*, 239 F.R.D. at 598 ("[A] rule 17(c) subpoena 'should be quashed or modified if it calls for privileged matter.'").

*Second*, Arabi cannot demonstrate that, to the extent any relevant, admissible material is sought in the Subpoena, it is not otherwise procurable in advance of trial by exercise of due diligence. Indeed, Arabi and his co-Defendants *have already obtained* an enormous volume of discovery that Qualcomm produced in an earlier civil litigation against Arabi and others related to the same fraud at issue in this case. Foran Decl. ¶¶ 4–5. In that proceeding, Arabi served dozens of discovery requests, encompassing many of the subjects covered by the Subpoena, and Qualcomm produced nearly *100,000* documents in response to those requests. *Id*. ¶ 5. Qualcomm provided *all* that discovery to the Government during its underlying investigation in

QUALCOMM'S NOTICE OF MOTION AND MOTION TO QUASH RULE 17(C) SUBPOENA

6475274

this case, which materials are presumably now available to Arabi and his co-Defendants. *Id.*

*Third*, the Subpoena lacks specificity and represents a "general fishing expedition." Rather than being used "to secure for trial certain documents or sharply defined groups of documents," as required for a Rule 17(c) subpoena, *United States v. Sellers*, 275 F.R.D. 620, 624 (D. Nev. 2011), the Subpoena contains sprawling, open-ended demands for vague categories of information, including, for example, all "Materials Related to Bias and Improper Motivations of Whistleblowers, Qualcomm as an Institution, Qualcomm Employees at the Time of the Acquisition, and other Key Witnesses," "[a]ll materials, notes, recordings, transcripts, and other documentation of Qualcomm's post-purchase investigation," and "[a]ll Qualcomm personnel files for all individuals who were involved with Qualcomm's due diligence investigation into the Abreezio acquisition, the origination of the Abreezio deal within Qualcomm, witnesses in the post-purchase investigation, and/or who had a relationship with Dr. Arabi while he worked at Qualcomm…." Foran Decl. Ex. A at 6–8. The Subpoena thus represents the quintessential "fishing expedition to see what may turn up," which is not a proper purpose for a pretrial document subpoena in a criminal case. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951).

Finally, even when a pretrial subpoena meets all of the required elements above—and the Subpoena here meets none of them—it may still be quashed when compliance would be unreasonable or oppressive. Fed. R. Crim. Proc. 17(c)(2). The Subpoena seeks enormous, poorly defined categories of irrelevant, inadmissible, confidential, and privileged materials, and, to the extent it seeks any relevant, non-privileged materials, the requests overlap with categories of discovery that Arabi previously sought and obtained in the prior civil litigation, and which Qualcomm provided to the Government in this case. *See United States v. Burley*, 2023 WL 3792641, at *4 (N.D. Cal. June 2, 2023) (quashing Rule 17 subpoena where "information Defendant … seeks is cumulative and unduly burdensome."). The scope

1    of information available under Rule 17 "pales in comparison to what is available under
2    the civil discovery rules," *United States v. Patterson*, 2020 WL 2217262, at *4 (D.
3    Md. May 7, 2020), but Arabi treats this Rule 17 Subpoena as if it were an opportunity
4    to continue discovery in the civil litigation. His demands are so overbroad that the
5    mere process of identifying and logging privileged documents would be
6    extraordinarily time- and resource-intensive. *See United States v. Pac. Gas & Elec.
7    Co.*, 2016 WL 3350326, at *3 (N.D. Cal. June 16, 2016) (quashing as unduly
8    burdensome Rule 17 subpoena request that would require subpoenaed party to spend
9    more than 80 hours gathering documents); *United States v. Jungen*, 2014 WL 4924654,
10   at *5 (E.D. Wis. Sept. 30, 2014) (quashing Rule 17(c) subpoena in part because "the
11   sheer amount of information that [the subpoenaed parties] would have to review, in
12   addition to creating a privilege log, would, in this court's view, be unduly
13   burdensome."). Requiring Qualcomm—the *victim* of Arabi's fraud—to comply with
14   the Subpoena would thus be immensely unreasonable and oppressive.

15   Accordingly, and for the reasons below, the Court is respectfully requested to
16   enter an order quashing the Subpoena.

17   **II    FACTUAL BACKGROUND**

18   **A.    Qualcomm Is Defrauded Into Purchasing Abreezio.**

19   From 2007 to 2012, Arabi worked for Qualcomm as a Vice President of
20   Engineering, and from 2013 to 2016 as a Vice President of Research and Development.
21   Dkt. No. 9 (Superseding Indictment) ¶ 1. As a Qualcomm employee, Arabi was bound
22   by agreements providing generally that any intellectual property he created during his
23   employment would be owned by Qualcomm. *Id*.

24   In October 2015, while Arabi was still employed by Qualcomm, the company
25   agreed to pay $180 million to acquire Abreezio, LLC, which had been presented to
26   Qualcomm as an "angel-funded Silicon Valley based" startup with "groundbreaking
27   technology" originally invented by Canadian graduate student Sheida Alan. *Id*. ¶¶ 2,
28   16. Unbeknownst to Qualcomm at the time, "Sheida Alan" was in fact Arabi's sister:

she had changed her name from Sheida Arabi just months before Qualcomm's acquisition of Abreezio closed. *Id*. ¶ 16.w. And although Ms. Alan was pursuing a master's degree in Canada, her research had nothing to do with the sophisticated semiconductor technology attributed to Abreezio. *Id*. ¶ 2. In fact, it was Defendant Karim Arabi who was intimately involved in the formation of Abreezio and the development of its technology—facts that he and his co-Defendants went to great lengths to conceal from Qualcomm, and to falsely attribute to Ms. "Alan," in order to dupe the company into agreeing to pay $180 million for technology developed by its own employee. *See id*. ¶¶ 15–16.

On August 10, 2023, Defendant Sanjiv Taneja entered a guilty plea pursuant to an agreement in which he admitted, among other things, that he participated with Arabi in a scheme to defraud Qualcomm in connection with its agreement to purchase Abreezio by concealing Arabi's role in the company's formation, development and marketing, and by attributing Arabi's actions to Sheida Alan. *See* Dkt. No. 144 (Plea Agreement) at 3–4.

**B.     In Civil Litigation Against Arabi, Qualcomm Produced Nearly 100,000 Documents.**

In 2017, after uncovering Arabi's fraud, Qualcomm filed a civil action in San Diego Superior Court against Arabi, Alan, and Taneja, *Qualcomm v. Arabi et al.*, Case Number 37-2017-00040719-CU-FR-CTL (S.D. Super.) (Trapp, J.) (the "Civil Litigation"). In connection with the Civil Litigation, Arabi sought, and Qualcomm produced, enormous volumes of information, including nearly 100,000 documents. Foran Decl. ¶ 5. Arabi's discovery requests included at least 57 document requests, 32 special interrogatories, and 30 requests for admission. *Id.* Many of these requests overlapped substantially with, or sought information encompassed by, the requests contained in the Subpoena that Arabi served in this case. For instance, Arabi's requests in the Civil Litigation included the following: "All documents related to the Abreezio purchase, …," Foran Decl. Ex. B (RFP No. 1); "All documents related to Karim Arabi,

…," *id.* (RFP No. 3); "Qualcomm's entire employment file for Karim Arabi, …," *id.* (RFP No. 8); "All documents related to Qualcomm's contention that Karim Arabi had any involvement in the Abreezio purchase," *id.* (RFP No. 14); and "All documents reflecting any communications related to this litigation or the Complaint in this litigation," *id.* (RFP No. 41). In response to these and dozens of other requests, Qualcomm produced approximately 99,868 documents. *Id.* ¶ 5.

### C.    Qualcomm Provided All of the Civil Discovery to the Government.

During its investigation in this case, the Government served Qualcomm with two grand jury subpoenas containing 15 documents requests. *Id.* ¶ 6. These requests sought, among other things, every document that any party had produced in the Civil Litigation. *Id.* ("All documents, records and ESI produced by any party in connection with the Civil Action"). Qualcomm produced approximately 102,508 documents to the Government in response to these subpoenas, including every one of the 99,868 documents that Qualcomm had previously produced to Arabi in the Civil Litigation. *Id.* at ¶ 7. Qualcomm also produced other documents to the Government, such as interrogatory responses and other written discovery from the Civil Litigation, certain Qualcomm company policies and personnel records relevant to this case, and other materials. Qualcomm understands that the Government has made these materials available to the Defendants in this case.  *Id.* at ¶ 8.

### D.    The August 7 Subpoena.

On August 7, 2023, Arabi served Qualcomm with the Subpoena, as well as a copy of a sealed order by this Court, dated July 28, 2023. *See* Foran Decl. Ex. A; *see id.* ¶ 2. Qualcomm did not receive a copy of the July 28 Order until it was served with the Subpoena on August 7. Qualcomm has not been provided with a copy of any materials submitted to the Court in connection with the July 28 Order nor with any explanation as to why Arabi waited until August 7 to serve Qualcomm with the Subpoena. Qualcomm submits this motion within 25 days of the July 28 Order.

III     **LEGAL STANDARD**

General discovery is not available to defendants in criminal cases. Rule 16 of the Federal Rules of Criminal Procedure prescribes the limited scope and substance of criminal discovery. Defendants do not have a generalized right to issue subpoenas calling for production of documents or other materials *before* trial. Under Rule 17(c), a subpoena that requires a witness to produce materials before trial must be approved by the court. Fed. R. Crim. Proc. 17(c)(1). As the Supreme Court and Ninth Circuit have repeatedly held, however, Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698–99; *Bowman Dairy*, 341 U.S. at 220 ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."). Rather, the purpose of Rule 17 is specific and narrow: "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698–99. A defendant therefore may not use a Rule 17(c) subpoena as an end-run around the limited documents and information available under Rule 16.

To ensure that Rule 17(c) subpoenas do not morph into a general discovery tool, the Federal Rules of Criminal Procedure and the courts place strict guardrails on their use. To obtain documents under Rule 17(c), the Supreme Court in *Nixon* held that a defendant must show, at minimum:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production . . .; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* at 699–700.[2] This District has codified this *Nixon* language, almost word for word, in its Local Rules. Under Local Criminal Rule 17.1, a subpoena duces tecum under

---

[2] The Ninth Circuit applies the *Nixon* standard when determining whether to quash a Rule 17 subpoena served on a non-party like Qualcomm. *See, e.g.*, *Fields*, 663 F.2d at 881 ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States.").

Rule 17(c) is therefore improper unless its proponent can show by declaration or affidavit:

> (1) [that] the documents or objects sought are evidentiary and relevant; (2) that the documents or objects sought are not otherwise reasonably procurable in advance of the trial, hearing or proceeding by exercise of due diligence; (3) that the moving party cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial, and (4) that the application is made in good faith and is not intended for the purpose of general discovery.

Applying these principles, *Nixon* and its progeny hold that the proponent of a Rule 17(c) subpoena has the burden to show that the requested documents are relevant, admissible, and specifically identified. *Nixon*, 418 U.S. at 700. The proponent must also "demonstrate that the subpoenaed materials are not available from any other source." *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981). In addition, even when a subpoena meets the above requirements, it may still be quashed if a court concludes that compliance with the subpoena would be "unreasonable or oppressive." Fed. R. Crim. Proc. 17(c)(2). This includes, among other circumstances, where a subpoena "calls for privileged matter.'" *Reyes*, 239 F.R.D. at 598.

Courts are also especially sensitive to subpoenas that seek information from or about a victim. Where such a subpoena seeks "personal or confidential information about a victim," it may be served only by court order, and, barring exceptional circumstances, the order may be issued only after "giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. Proc. 17(c)(3).

## IV   **ARGUMENT**

Arabi's Subpoena reflects a textbook generalized "fishing expedition" and cannot meet any of the required elements for a pretrial subpoena in a criminal case. It contains *49* separate requests seeking materials that are irrelevant and inadmissible, demands materials that can be—and have been—procured elsewhere, lacks specificity, and is otherwise unreasonable and oppressive. It should therefore be quashed.

**A.    The Subpoena Seeks Information that Is Irrelevant and Inadmissible.**

Arabi cannot meet his burden to demonstrate that the Subpoena is directed to information that is evidentiary and relevant. "It is not enough that the documents requested in a Rule 17(c) subpoena *duces tecum* may have some potential of relevance and evidentiary use." *Sellers*, 275 F.R.D. at 624. The proponent must show that there is a "sufficient likelihood" that the documents requested by the Subpoena are "relevant to the offenses charged in the indictment." *Id.*; *see United States v. Akhavan*, 505 F. Supp. 3d 289, 291 (S.D.N.Y. 2020) (quashing subpoena even when it was "doubtless" that "relevant information [was] among the nine categories of documents" requested because the court would "not command [the subpoenaed party] to turn over the haystack so that [the defendant] can extract the needle"). The proponent must further show that these documents sought would be admissible at trial. *Nixon*, 418 U.S. at 700; *Reyes*, 239 F.R.D. at 600.

Most of the Subpoena's requests seek documents irrelevant to Arabi's charged crimes. For instance, the requests in section 3A seek "[a]ll Qualcomm personnel files" for anyone who so much as "had a relationship with Dr. Arabi while he worked at Qualcomm." Foran Decl. Ex. A at 8. This request also includes a *non-exhaustive* list of 34 current and former employees. *Id.* Even putting aside that Qualcomm cannot reasonably identify everyone with whom Arabi "had a relationship" during his decade at the company, Arabi cannot maintain that the private *personnel file* for every such employee is likely to contain information relevant to the conspiracy and wire fraud that Arabi is charged with in the indictment. *See* Dkt. No. 9 (Superseding Indictment) at, *e.g.*, ¶¶ 13–16, 18–20.

Other requests also seek irrelevant materials. Request 2A.8 seeks "[a]ll materials or information related to any internal incentive program that Qualcomm has to reward internal whistleblowers." Foran Decl. Ex. A at 8. This request is not limited to any time period, to Abreezio, or to allegations against Arabi or any other defendant.

Rather than targeting relevant information, this request seeks open-ended discovery into Qualcomm's general practices and experience with internal whistleblowers. Courts regularly quash similar subpoenas. In *Reyes*, 239 F.R.D. 591, for instance, the court described a request for the defendant's former employer's "programs," "policies," and "practices" as "a quintessential fishing expedition" and quashed the request when there was no indication that such materials [were] likely to become relevant." *Id.* at 605–06. *See also United States v. George*, 883 F.2d 1407, 1418 (9th Cir. 1989) (affirming order quashing subpoena to FBI that "sought extensive information for all bank robberies occurring in Orange County" during seven-month period).

Even requests that bear some facial relationship to the subject matter of this case are vastly overbroad and encompass information that is clearly irrelevant. Requests 1A.2 and 1A.6, for example, seek materials related to the conclusions of Qualcomm's investigation into the Abreezio acquisition and Qualcomm's motivation for continuing to investigate Arabi's fraud. Foran Decl. Ex. A at 6. Although these documents cover the same general subject matter as the charges against Arabi, Qualcomm's motivations for investigating Arabi and its conclusions from those investigations do not tend to prove or disprove any fact material to a charge or defense, and therefore are not the proper subject of a Rule 17 subpoena. Simply put, the assessment of Qualcomm and its counsel regarding Arabi's liability or culpability is not relevant. *See Reyes*, 239 F.R.D. at 600 (defendant's former employer's "attorney's formal opinion about whether any crimes were committed would not be relevant evidence—that determination is for a jury of [defendant's] peers to make, not for [employer's] lawyers].").

For similar reasons, Arabi cannot show that the Subpoena seeks only *admissible evidence*. 418 U.S. at 699–700; CrimLR 17.1. The requests seeking irrelevant information do not seek admissible evidence. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"). But nearly all of the other requests also fail because they seek

inadmissible hearsay. For example, the Subpoena contains numerous requests for "notes, recordings, transcripts, and other documentation" purporting to reflect what potential witnesses and interviewees told Qualcomm, Foran Decl. Ex. A at 6 (Requests 1A.3–7); what Qualcomm "told the government," *id.* at 6–7 (Request 1A.1, 2A.1–2A.6); and what the Government told Qualcomm, *id.* at 7 (Request 2A.1, 2A.5). None of these items constitutes admissible evidence. As in *Reyes*, where the court quashed a Rule 17(c) subpoena for failing to seek admissible evidence, "[t]he first set of materials—that is, the 'summaries, notes and memoranda related to the interviews of [Qualcomm] employees'—includes only hearsay." 239 F.R.D. at 600. Also as in *Reyes*, "[t]o the extent that [Arabi] seeks evidence of what [Qualcomm or its counsel] told the government about these interviews, the materials would be hearsay-upon-hearsay." *Id.* Documents reflecting what the Government told Qualcomm likewise constitute hearsay or hearsay-upon-hearsay. Meanwhile, none of these out-of-court statements falls under any exception to the rule against hearsay, "either as present sense impressions, past recollections recorded, or business records." *Id.*; Fed. R. Evid. 803; *see also United States v. Collins*, 2013 WL 1089908, at *4 (N.D. Cal. Mar. 15, 2013) (quashing subpoena requests that "explicitly call[ed] for inadmissible hearsay" about relevant topics and did not satisfy any hearsay exception).

In requesting documents that purport to reflect what witnesses told Qualcomm, what Qualcomm told the Government, and what the Government told Qualcomm, Arabi may be fishing for impeachment material for potential trial witnesses. But even if Arabi had any basis to believe that these documents contained impeaching information (he does not), "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial" through a Rule 17(c) subpoena. *Nixon*, 418 U.S. at 701; *Fields*, 663 F.2d at 881 ("The only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes. This use is generally insufficient to justify the pretrial production of documents."); *Reyes*, 239 F.R.D. at 601

("Unfortunately for [defendant], Rule 17(c) does not entitle him to the pre-trial production of impeachment material.").[3]

The Subpoena fails each of *Nixon's* relevance and evidentiary requirement for yet another reason: it is so overbroad that evaluating this requirement is impossible. *See also infra*, IV.C. When the requests are so broad as to make it impossible to analyze whether responsive materials would be relevant and admissible, the subpoena must be quashed. *See United States v. Zavada-Tapia*, 2010 WL 5330506, at *1 (E.D. Cal. Dec. 20, 2021) ("The requested subpoenas are so broad and unspecific that the court is also unable to determine the admissibility of the evidence sought."). In *United States v. Pacific Gas & Electric Co.*, 2016 WL 3350326, at *3, for instance, defendants sought broad categories of documents similar to what Arabi seeks, such as "'[a]ll notes, drafts, documents, and files concerning' all investigation and testimony in a … proceeding over a six year period" and "'all of your correspondence, documents, and files concerning" the defendant "over a six year period." (brackets in original). The court held that it "could not possibility [sic] find that such broad document requests are relevant, admissible, and specific for the simple reason that the requests are so broad that the Court cannot conduct a meaningful *Nixon* analysis." So too here, the breadth of the requests prohibits any meaningful ability to find that the Subpoena seeks relevant, admissible, and specific evidence.

**B.    The Subpoena Seeks Materials Procurable From Other Sources.**

The Subpoena should also be quashed because Arabi cannot show that the documents he seeks "are not otherwise procurable reasonably in advance of trial by the exercise of due diligence." *Nixon*, 418 U.S. at 699–700; *United States v. Chan*,

---

[3] To the extent that any responsive document qualifies as a witness statement, its production is governed by Rule of Criminal Procedure 26.2 and the Jencks Act. Such a witness statement is expressly *not* discoverable via a Rule 17(c) subpoena. *See* Fed. R. Crim. Proc. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule.")

1  2020 WL 2425798, at *4 (N.D. Cal. May 12, 2020). In fact, Arabi has already obtained
2  such materials.

3          Even if, contrary to fact, the Subpoena were narrowly tailored to specific, non-
4  privileged documents related to this case that actually exist, such materials have
5  already been provided to Arabi. As described above, Qualcomm produced nearly
6  100,000 documents to Arabi in the Civil Litigation. The Civil Litigation concerned the
7  same scheme to defraud at issue in this criminal case. Under California's broad civil
8  discovery standard, Arabi had every opportunity to conduct searching and expansive
9  document discovery—which he did, serving at least 57 requests for production and
10  dozens of written discovery requests. Foran Decl. ¶ 5. Many of his requests from the
11  Civil Litigation even track or encompass the requests in the Subpoena here, such as
12  his requests for "All documents related to the Abreezio purchase …," Foran Decl.
13  Ex. B (RFP No. 1); "All documents related to Karim Arabi …," *id.* (RFP No. 3); and
14  "All documents related to Qualcomm's contention that Karim Arabi had any
15  involvement in the Abreezio purchase," *id.* (RFP No. 14). The Government obtained
16  all the documents that Qualcomm produced in response to these demands in
17  connection with its underlying investigation. Foran Decl. ¶¶ 6–7.[4] Arabi thus clearly
18  cannot demonstrate that the Subpoena is limited to documents that are not otherwise
19  procurable reasonably in advance of trial by the exercise of due diligence. *Nixon*, 418
20  U.S. at 699–700; CrimLR 17.1.

21      **C.    The Subpoena Lacks Specificity and Represents a "General Fishing**
22              **Expedition."**

23          The Subpoena should also be quashed because it fails *Nixon*'s requirement of
24  "specificity." 418 U.S. at 699–700. This prong "requires Rule 17 subpoena requests to
25  be particularized and to identify specific items or documents that defendants believe

26  _____

27  [4] Even requests that are not literally duplicative of the Civil Litigation, such as those
    seeking communications between Qualcomm and the Government (Requests 2A.1–
28  2A.6), are more appropriately directed to the Government, which has access to the
    same documents, is a party in the case, and is not a victim of Arabi's fraud.

in good faith are in existence." *United States v. Lee*, 2009 WL 724042, at *2 (N.D. Cal. Mar. 18, 2009) (citing *Nixon*, 418 U.S. at 700). "[T]he mere hope that the documents sought will produce favorable evidence is not sufficient"—specificity "is not satisfied if the defendants do not know what the evidence consists of or what it will show." *Id.* This requirement "ensures that the subpoenas are used only to secure for trial certain documents or sharply defined groups of documents," and helps to prevent a defendant from using a Rule 17(c) subpoena as a "fishing expedition." *Sellers*, 275 F.R.D. at 624.

Far from being "sharply defined," *id.*, Arabi's requests reflect a "mere hope" that they may turn up favorable evidence, *Lee*, 2009 WL 724042, at *2. For instance, Arabi's request for untold numbers of personnel files, including for current or former employees whom he cannot even identify by name, Foran Decl. Ex. A at 8 (Request 3A), betray that Arabi "do[es] not know what the evidence consists of or what it will show." *Lee*, 2009 WL 724042, at *2; *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").

The Subpoena is rife with such non-specific requests based on the "hopes that something useful will turn up." A good example is Request 2A.7, which reads more like an abstract concept than a document request. It states in its entirety: "Materials Related to Bias and Improper Motivations of Whistleblowers, Qualcomm as an Institution, Qualcomm Employees at the Time of the Acquisition, and other Key Witnesses." Foran Decl. Ex. A at 7 (Request 2A.7). This request is so non-particularized that it fails to identify any "specific items or documents that [Arabi] believe[s] in good faith are in existence." *Lee*, 2009 WL 724042, at *2. None of the capitalized terms is defined, so it is impossible to know what "Bias," what "Improper Motivations," which "Whistleblowers," which "Qualcomm Employees," and which "other Key Witnesses" the request is referring to. As there is clearly no specificity in

1   Arabi's request or suggestion of what exactly he expected to find, his request
2   represents the type of general fishing expedition forbidden by *Nixon.*

3       A similarly non-specific request is Request 1A.7, which both (a) refers to a
4   Bates-numbered document that Qualcomm does not have ("TL-REPORTS-000011")
5   and (b) includes a confusing bracketed interjection suggesting that the document was
6   meant to be attached to an attorney declaration that Qualcomm also does not have
7   ("[Add to WZB Dec]"). *See* Foran Decl. Ex. A at 6–7. These requests are "so
8   overbroad as to be unintelligible." *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327,
9   1342 (D. Colo. 2015) (in a *civil* case, granting a motion to quash an unintelligible
10  request).

11      Another example is Request 2A.8, which seeks "[a]ll materials or information
12  related to any internal incentive program that Qualcomm has to reward internal
13  whistleblowers." Foran Decl. Ex. A at 8. A request for "[a]ll materials" related to an
14  unnamed, unknown program or programs fails *Nixon*'s specificity requirement on its
15  face. *See, e.g.*, *United States v. Western Titanium, Inc.*, 2010 WL 11628781, *2 (S.D.
16  Cal. Nov. 22, 2010) (quashing "demand for 'any and all' documents relating to several
17  categories of subject matter" because it did not request "specific evidentiary items");
18  *see Collins*, 2013 WL 1089908, at *4 ("'any and all' requests are particularly suspect
19  in any Rule 17(c) analysis"). To make matters worse, Request 2A.8 lacks any time
20  limitation and any criteria by which Qualcomm can assess whether a policy qualifies
21  as an "incentive program." *See Reyes*, 239 F.R.D. at 606 ("Where, as here, a defendant
22  requests any and all information related to a particular policy or procedure, courts have
23  rejected such requests as an abuse of Rule 17(c).").

24      Indeed, none of the Subpoena's requests seeks any specific document or
25  "sharply defined groups of documents." *Sellers*, 275 F.R.D. at 624. Most of the
26  requests seek "[a]ll materials, notes, recordings, transcripts, and other documentation"
27  without any indication that such materials exist. *See, e.g.*, Foran Decl. Ex. A at 6–7
28  (Requests 1A.2–6, 2A.1–6). The overbroad and vague sweep of these requests make

clear that Arabi "do[es] not know what the evidence consists of or what it will show." *Lee*, 2009 WL 724042, at \*2.

### D. Compliance With the Subpoena Would Be Unreasonable and Oppressive.

The Subpoena should also separately be quashed because compliance would be unreasonable and oppressive. Fed. R. Crim. Proc. 17(c)(2). As discussed above, the Subpoena seeks vast and poorly defined categories of irrelevant, inadmissible, non-specific, and otherwise available materials. Even beyond this, however, the Subpoena is unreasonable and oppressive because it includes numerous requests that plainly encompass materials protected by the attorney-client privilege and the attorney work-product doctrine.

"[A] rule 17(c) subpoena 'should be quashed or modified if it calls for privileged matter.'" *Reyes*, 239 F.R.D. at 598; *United States v. Ellis*, 2017 WL 1164172, at \*3 (N.D. Cal. Mar. 29, 2017) (quashing subpoena that sought privileged matter); *see also Fields*, 663 F.2d at 881 (noting the subpoena was "questionable" when the subpoena sought employee statements and interview transcriptions gathered in an attorney-directed investigation (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981))). Most of the Subpoena's blunderbuss requests call for protected materials. Request 1A.3, for example, demands "[a]ll materials, notes, recordings, transcripts, and other documentation of Qualcomm's interviews with Sanjiv Taneja during its investigation and/or pursuant to the settlement agreement entered into between Qualcomm and Mr. Taneja …" Foran Decl. Ex. A at 6. Qualcomm's investigative interviews with Sanjiv Taneja were conducted by outside counsel, at the direction of Qualcomm's in-house counsel, to prepare for the Civil Litigation. Foran Decl. ¶ 9; *see, e.g.*, *Upjohn*, 449 U.S. at 399 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) ("At its core, the work-product doctrine

QUALCOMM'S NOTICE OF MOTION AND MOTION TO QUASH RULE 17(C) SUBPOENA

shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," and protects "material prepared by agents for the attorney as well as those prepared by the attorney himself."). And the "settlement agreement" with Taneja was, of course, the product of negotiations by counsel. Indeed, every one of Arabi's requests for "materials, notes, recordings, transcripts, and other documentation" under 1A calls for similar privileged matters. *See* Foran Decl. Ex. A at 6 (Requests 1A.1–6). Such materials, if they exist, are mostly or entirely attorney work product, attorney-client communications, or both.

The same is true of Arabi's requests for "materials, notes, recordings, transcripts, and other documentation" regarding Qualcomm's meetings or communications with the government under Request 2A. Qualcomm's interactions with the government in this case were conducted entirely through its outside and in-house counsel. Foran Decl. ¶ 10. Other than materials that Qualcomm already shared with the Government (which are therefore available to Arabi), any notes and other documentation from those interactions are protected by attorney-client privilege and work product.

Arabi's few remaining requests—including his requests for "Materials Related to Bias" (Request 2A.7), "materials related to any internal incentive program" (Request 2A.8), and personnel files (Request 3A)—are so ill-defined and overbroad that they too sweep in privileged matter. Arabi's attempted invasion of Qualcomm's privilege is yet another independent reason to quash the Subpoena. And even if Qualcomm were compelled merely to *log* its privilege materials rather than to *disclose* them, the mere exercise of identifying and logging thousands of privileged documents responsive to each of the Subpoena requests (and separating them from non-privileged documents) would require Qualcomm to expend extraordinary resources, including many scores of hours by its outside and in-house counsel, akin to what might be required in responding to broad civil discovery. *United States v. Jungen*, 2014 WL 4924654, at *5 (E.D. Wis. Sept. 30, 2014) (quashing Rule 17(c) subpoena in part

because "the sheer amount of information that [the subpoenaed parties] would have to review, in addition to creating a privilege log, would, in this court's view, be unduly burdensome."); *United States v. Patterson*, 2020 WL 2217262, at *4 (information available through Rule 17 subpoena "pales in comparison to what is available under the civil discovery rules"). Such an exercise is both unreasonable and oppressive under Rule 17(c)(2). *See United States v. Pac. Gas & Elec. Co.*, 2016 WL 3350326, at *3 (quashing as overly burdensome a Rule 17 subpoena request that would have required subpoenaed party to spend more than 80 hours gathering documents).

Finally, two of the Subpoena's requests are unreasonable and oppressive for the additional, independent reason that they would not order Qualcomm to produce "books, papers, documents, data, or other objects," as Rule 17(c)(1) contemplates, but would instead order Qualcomm to prepare the equivalent of civil interrogatory responses. *See Patterson*, 2020 WL 2217262, at *4 ("interrogatories … are not available under Fed. R. Crim. P. 17.") Request 1A.1 demands that Qualcomm create "[a] list" of people that Qualcomm purportedly told the Government it interviewed, and Request 2A.2 demands that Qualcomm "identif[y]" certain documents it purportedly provided to the Government. Foran Decl. Ex. A at 6–7. As these requests "in essence seek[] the equivalent of civil interrogatories," they improperly treat victim Qualcomm as a civil litigant, and must be quashed. *United States v. Nix*, 251 F. Supp. 3d 555, 558 n.2 (W.D.N.Y. 2017) (quashing Rule 17 subpoena requests "seeking the equivalent of civil interrogatories" because Rule 17 does "not authorize the seeking of sworn testimony in written form"). Whether or not Defendant seeks to delay his criminal trial, the oppressiveness and unreasonableness of the Subpoena may, if not quashed, accomplish that result. *See, e.g.*, *United States v. Ali*, 2007 WL 1229415, at *6–7 (D. Or. Apr. 24, 2007) (quashing Rule 17(c) subpoena when "production of the subpoenaed documents could delay trial for months").

**V**     <u>**CONCLUSION**</u>

Arabi victimized Qualcomm with his sophisticated fraud. He should not be permitted to harass his victim further by forcing Qualcomm to comply with an improper pretrial document subpoena that seeks irrelevant, inadmissible, overbroad, otherwise available, and privileged information. Non-party Qualcomm respectfully requests the Court grant this motion and quash the August 7, 2023 subpoena.

Dated:  August 22, 2023

Respectfully submitted,

HUESTON HENNIGAN LLP

By: _____
    Marshall Camp
    Padraic W. Foran
    Martin E. Brenner
    Counsel for Non-party
    Qualcomm Technologies, Inc.

6475274

1

## PROOF OF SERVICE

2     I am employed in the County of Orange, State of California.  I am over the age
of 18 and not a party to the within action.  My business address is 523 West 6th
3     Street, Suite 400, Los Angeles, CA 90014.

4     On August 22, 2023, I served the foregoing document(s) described as:

5     **NON-PARTY QUALCOMM TECHNOLOGIES, INC.'S NOTICE OF
MOTION AND MOTION TO QUASH RULE 17(c) SUBPOENA DUCES
6     TECUM; MEMORANDUM OF POINTS AND AUTHORITIES**

7     on the interested parties in this action as stated below:

8     Whitney Z. Bernstein
Bienert Katzman Littrell Williams LLP
9     903 Calle Amanecer, #350
San Clemente, CA 92673

10

11    ☒    BY E-MAIL OR ELECTRONIC TRANSMISSION:  I served the persons at the
e-mail addresses listed above from email address mbrenner@hueston.com.  I
12    did not receive, within a reasonable amount of time after the transmission, any
electronic message or other indication that the transmission was unsuccessful.

13

14    I declare under penalty of perjury that the foregoing is true and correct, and that
I am employed in the office of a member of the bar of this Court at whose direction
the service was made.

15

16    Executed on August 22, 2023, at Los Angeles, California.

17

_____          _____
18         Martin Brenner                            /s/ Martin Brenner
         (Type or print name)                       (Signature)

19

20

21

22

23

24

25

26

27

28

6475274