ADAM GORDON
United States Attorney
NICHOLAS W. PILCHAK
California Bar No. 331711
JANAKI G. CHOPRA
California Bar No. 272246
ERIC R. OLAH
California Bar No. 295513
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-8817
janaki.chopra@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 22-cr-1152-BAS-4 |
|---|---|
| Plaintiff, | Date: February 6, 2026<br>Time: 9:30 a.m. |
| v. | Honorable Cynthia Bashant |
| ALI AKBAR SHOKOUHI (4), | **THE UNITED STATES' SENTENCING MEMORANDUM AND MOTION UNDER USSG § 5K1.1** |
| Defendant. | |

    Defendant Ali Akbar Shokouhi was a key participant in a $180 million fraud, and personally received over $16 million in proceeds, as part of over $24 million received by business entities he controlled. Dr. Arabi recruited Shokouhi to provide capital to Abreezio, enabling the co-conspirators to develop the company and technology that they would use to defraud Qualcomm. As part of the scheme, Shokouhi not only concealed Dr. Arabi's role in Abreezio, but also his own, because of his prior self-dealings that got him fired from Qualcomm.

    To his credit, Shokouhi cooperated in this criminal investigation, sat for multiple proffers, and testified against Dr. Arabi at his jury trial. Based on his cooperation, the United States recommends a 6-level downward departure for Shokouhi under USSG

§ 5K1.1. To avoid an unwarranted sentencing disparity with co-defendants, and to account for Shokouhi's serious medical condition, the United States ultimately recommends a sentence of time served for Shokouhi, followed by three years of supervised release. He should also be ordered to pay $16,084,946 in restitution and forfeit $16,084,946, including the contents of the financial accounts and the residence identified in the forfeiture addendum to his plea agreement.

## I.
## STATEMENT OF THE CASE

Shokouhi pleaded guilty to money laundering in violation of Count 8 of the second superseding indictment on October 5, 2023. ECF 175, 179. He also admitted conduct constituting a wire fraud conspiracy underpinning the laundering activity.

## II.
## STATEMENT OF FACTS

**A.   The Fraud.**

Early in the scheme, Dr. Arabi approached Shokouhi to provide capital for Abreezio, a company purpose-built to hide that Dr. Arabi himself had invented its core technology, which was later sold to Qualcomm for $180 million. Before he was involved in the Abreezio fraud, Shokouhi was employed at Qualcomm as a Vice President, but was terminated due to his own self-dealing by facilitating contracts between companies he controlled and Qualcomm. During the fraud scheme, Shokouhi participated in a series of meetings with Dr. Arabi, some of which included Ziad Mansour and co-defendant Sanjiv Taneja. Shokouhi, through companies he owned with Behrooz Abdi, agreed to finance Abreezio and provide back-office services to help Abreezio function as they marketed it to Qualcomm.

Because of his prior termination by Qualcomm, Shokouhi actively concealed his own role in the scheme, as well as that of Dr. Arabi. Specifically, as he admitted in his plea agreement, he conspired with his co-conspirators to purposely deceive Qualcomm about how Abreezio was funded. In addition, Shokouhi communicated with a "Sheida"

email address, fully knowing that he was communicating with Dr. Arabi. Shokouhi also referred to Dr. Arabi as "Sheida" during the conspiracy to keep up the façade that Abreezio was Sheida's creation and not Dr. Arabi's, then a Vice President of Qualcomm's Corporate Research and Development department.

**B.      The Money Laundering.**

Shokouhi personally received over $16 million as part of the Abreezio acquisition, as part of over $24 million that Qualcomm paid to companies he controlled. He used a portion of the proceeds to purchase his residence, which is currently the subject of an interlocutory sale, as well as stock options totaling over $136,000. That latter transaction was charged as a money laundering spending clause violation, under 18 U.S.C. § 1957. This conduct underpins the count of Shokouhi's conviction.

**C.      The Civil Suit.**

Qualcomm did not sue Shokouhi. However, as part of a settlement, Shokouhi and Abdi settled with Qualcomm and paid $6,000,000.

**D.      Cooperation in the Criminal Investigation.**

Shokouhi elected to accept responsibility, plead guilty, and cooperate with the United States. Shokouhi's cooperation with the government's investigation was significant. He sat for debriefs with the United States and provided information about uncharged co-conspirators. Shokouhi also provided emails that the United States did not otherwise have. Further, information from his guilty plea was included in the extradition package for co-defendant Bradley Quinton, and supplemented the extradition package for co-defendant Sheida Alan.

Shokouhi also testified at Dr. Arabi's trial. Prior to trial, he participated in two different trial preparation sessions with the prosecution team. He did so despite his severe medical condition, which was persistent throughout his cooperation. Indeed, Shokouhi appeared for trial preparation meetings even though he had recently been hospitalized. During his trial testimony, Shokouhi described his in-person meetings with Dr. Arabi and other co-conspirators, and authenticated important communications between himself and

his co-conspirators. Shokouhi provided the jury with facts surrounding the initial formation of Abreezio as a business entity and explained that Dr. Arabi was "running the company" and "making the decision[s] about everything." Trial Tr. 1015:8-11. He also explained that co-conspirators called Dr. Arabi "Sheida" quite simply "because we're trying to hide his name from Qualcomm, that he is involved with Abreezio." Trial Tr. 1015:21-23. Finally, Shokouhi's testimony corroborated the prosecution's other cooperating witness, Sanjiv Taneja, who was subject to extensive cross-examination. Depending on the state of his health, the United States understands Shokouhi remains available to testify at Ms. Alan and Brad Quinton's trials.

## III.
## ARGUMENT

**A.    The Advisory Guidelines Calculations.**

The Court should adopt the advisory guidelines calculation set forth in the parties' plea agreement.

**B.    The Court Should Use the Bargained-For Loss Amount.**

The parties agreed to recommend a loss amount of over $9.5 million for Shokouhi's personal receipts from the charged scheme, which were just over $16 million. The Court should accept this loss amount for purposes of the Guidelines calculation.

**C.    Other Adjustments.**

The Court should impose a one-level upward adjustment for a violation of 18 U.S.C. § 1957, a three-level reduction for acceptance of responsibility, and a two-point reduction for Shokouhi's status as a zero-point offender.[1] It should not impose a role adjustment, as Shokouhi played neither an aggravating nor a mitigating role in the offense. In particular, Dr. Arabi recruited Shokouhi (and everyone else) and was more culpable than Shokouhi

---

[1]    Because the parties entered into the plea agreement before the zero-point offender reduction was incorporated into the Guidelines at USSG § 4C1.1, the parties' Guidelines calculations in the plea agreement recommend the equivalent of the zero-point offender departure as a USSG § 5K2.0 departure. Now that § 4C1.1 is formally a part of the Guidelines, the United States recommends the Court depart accordingly.

but nevertheless did not receive an aggravated role adjustment. Shokouhi was not a minor player either, as he provided the business backing that made Abreezio run, and actively concealed not only Dr. Arabi, but also himself, as part of the fraud scheme. Thus, a role adjustment would be inappropriate in Shokouhi's case.

### D.  Section 5K1.1 Reduction.

Shokouhi cooperated extensively. He sat for debriefs with the United States, participated in trial preparation, provided documents the government did not otherwise have, and testified against his more-culpable co-defendant. This type of cooperation was necessarily public and therefore further put himself, his businesses, and misdeeds into the public light. And he remains available and willing to cooperate against his two remaining co-defendants, should he be healthy enough to do so.  The Court should grant a six-level reduction under § 5K1.1 to recognize the scope, duration, and effect of this cooperation.

### E.  Section 3553(a).

One of the statutory goals of sentencing is to avoid unwarranted sentencing disparities with similarly situated defendants. 18 U.S.C. § 3553(a)(6). In this case, Shokouhi's much more culpable co-defendant, Dr. Arabi, filed every conceivable motion to dismiss and suppress—and some that were almost inconceivable—and refused to accept any responsibility even after a resource-intensive jury trial that spanned five weeks. Dr. Arabi recruited every other member of the conspiracy and, through his straw-holding sister, received more proceeds than anyone else in the conspiracy. Compared to Shokouhi, specifically, Arabi and his sister received almost six times as much money. Nevertheless, Dr. Arabi received a significantly below-Guidelines sentence of 48 months. In addition, co-defendant Taneja received a below-Guidelines sentence of time served.

Furthermore, as will no doubt be expounded by his attorneys, Shokouhi has very significant health concerns, which include repeated hospitalization during the pendency of this case, that would only be exacerbated by time in custody. The PSR details many of those concerns and recommends a 10-level reduction based on them.

In light of all these factors, and to avoid sentencing disparities with co-defendants, the Court should vary downward to a sentence of time served.

### F. Supervised Release.

A term of supervised release is appropriate in Shokouhi's case based chiefly on the need to assure restitution payments beyond the amount of seized assets.

### G. Financial Penalties.

#### 1. Restitution

Restitution is mandatory for this money laundering offense. 18 U.S.C. § 3663A(a), (c)(1)(A)(ii), (c)(1) (B). The United States recommends a restitution order in the amount of Shokouhi's personal receipts, which is $16,084,946. This amount is contemplated by Shokouhi's plea agreement. *See* ECF 179-1.

The United States has no objection to a provision in the restitution order giving Shokouhi credit for restitution voluntarily paid by his codefendants, to the extent that that amount overlaps with his order of restitution.[2] The United States will tender a proposed order separately to chambers.

#### 2. Forfeiture

The Court previously entered a preliminary order of forfeiture (POF) against Shokouhi, based on the parties' agreement. ECF 507. The Court should confirm the terms of this order at Shokouhi's sentencing, orally pronounce the forfeiture, and incorporate it in his judgment of conviction. The Court should also note, however, that by the parties' agreement and the POF, the seized assets subject to forfeiture under the POF are to be turned over to the Clerk of Court for application to restitution, and should credit as such against Shokouhi's money judgment. *Id.* at 4.

---

[2] It would not be proper to grant Shokouhi joint and several restitution with Taneja, however, because—like Shokouhi—Taneja will likely be ordered to repay only his personal receipt of fraud proceeds, which do not overlap with Shokouhi's personal receipts. Dr. Arabi, on the other hand, was ordered to repay the entire outstanding balance of Qualcomm's losses.

### 3.  *Fine*

Per the parties' plea agreement, and in light of the significant restitution and forfeiture judgments contemplated, the United States does not recommend the imposition of a fine.

### IV.
### **CONCLUSION**

Shokouhi should be sentenced to time served, followed by three years of supervised release. He should also be ordered to pay $16,084,946 in restitution and to forfeit $16,084,946, as well as the specified assets in the forfeiture addendum, including his real property.

DATED: January 30, 2026.              ADAM GORDON
                                      United States Attorney

                                      /s/ *Janaki G. Chopra*
                                      NICHOLAS W. PILCHAK
                                      JANAKI G. CHOPRA
                                      ERIC R. OLAH
                                      Assistant U.S. Attorneys